JAMES N. RICHARDS, receiver, &c., *v.* THOMAS E. ALLEN.

A sale of personal property, made ostensibly under dormant executions, while another execution is in the sheriff's hands, is valid, and vests the title in the purchaser.

The remedy of the plaintiff in the other execution, is by motion to have the proceeds of the sale applied to its satisfaction in preference to the dormant executions.

Where, instead of pursuing that course, he took "supplementary proceedings" against the plaintiff in the dormant executions—who was the purchaser at the sale in question—and obtained the appointment of a receiver, to whom the debtor executed an assignment; *held*, that the receiver could not recover the value of the property in an action against the purchaser.

Where the holder of the valid execution, being present and apprehending a relinquishment of the sale, requested the sheriff to proceed; *held*, that he could not call in question the validity of the sale.

And where, in such an action, the answer in claiming title to the property, averred the sale under the dormant executions; it was *held*, that the plaintiff was not entitled to a recovery, although the defendant had failed to set up the valid execution, the latter being shown by the proofs to have been in the hands of the sheriff at the time of the sale.

Where a judgment debtor, in proceedings supplementary to execution, assents to the jurisdiction of the officer by whom the order was granted, by executing an assignment to a receiver appointed therein; a third party cannot impeach the

title of such assignee, for an irregularity in the proceedings prior to the assignment.

Although a general direction to the sheriff to delay an execution, renders it dormant and gives priority to a junior execution; yet, although dormant as to other creditors, it may not be so as to the judgment debtor.

THIS action was brought by a receiver, appointed in proceedings supplementary to execution against a judgment debtor, to recover $1,000 as the value of certain property purchased by the defendant at a sheriff's sale.

On the 17th of May, 1849, one William B. Sheehan, as collateral security to certain promissory notes, confessed two judgments, one to the defendant, for $612 15; the other to one Ludlum, for $523 33. The latter was assigned to the defendant, February 1, 1850.

On the day the judgments were Docketed, executions were issued thereon to the sheriff of New York, with instructions not to sell until arrangements could be effected for the benefit of Sheehan; the sheriff being at the same time assured that it was not the desire of the execution creditor to break up the business of the debtor.

The next day, May 18, the sheriff, at the debtor's store, levied upon the property in question, without, however, making any inventory at the time.

On the 12th of September, 1849, one Edward Houghton recovered a judgment against Sheehan for $581 87, and on the 20th of the same month an execution thereon was issued to the sheriff of New York.

On the 3d of January, 1850, the county judge of Kings granted an order to examine the debtor in proceedings supplementary to execution upon the judgment of Houghton, with the usual injunction, and notice of these proceedings was immediately given to Allen, the defendant in this suit.

On the 5th of February, 1850, the sheriff of New York put up the property for sale under the two executions of May 17. The attorney of Houghton was in attendance, and there being reason to apprehend that the sale might be relinquished, he requested the sheriff to proceed. The defendant Allen, the

Richards v. Allen.

owner of the two judgments confessed, became the purchaser of the property. The proceeds of the sale were applied to the satisfaction of one of the two judgments of May 17 in full, and the residue was paid on account of the other of those two judgments.

On the 27th of February, 1850, pursuant to the proceedings before the county judge, and upon a stipulation or consent signed by an attorney acting for Sheehan, the plaintiff Richards was appointed receiver of his estate, with the usual powers. In March, 1850, in obedience to an order made in those proceedings, the debtor assigned to such receiver all the property and effects owned by him at the time the original order for his examination was granted.

The complaint in this suit was filed by the receiver to obtain the value of the property in dispute, upon the ground that the sale by the sheriff was invalid and passed no title to the defendant.

The answer set up the judgments and executions of May 17, 1849, and averred that the property was levied upon and sold to him by the sheriff in pursuance thereof. It was alleged that the defendant became possessed of the property " in no other way or manner," and no reference was made to the execution issued upon the judgment of Houghton.

At the trial the defendant called the debtor, and proposed to him questions in respect to the proceedings under the order of the county judge for his examination. The manifest object of these inquiries was to impeach the regularity of the proceedings prior to the assignment to the receiver, and they were excluded.

The cause was tried by Hon. THOMAS W. CLERKE, as referee, who reported in favor of the plaintiff, for $586 70. A judgment was entered upon the report for that sum and $241 29 costs. The defendant appealed to the court at general term.

*Richard M. Harrington*, for the defendant, made and argued the following points :

I. The referee erred, as a matter of law, in deciding that by reason of the execution of the defendant against Sheehan and of Ludlum against Sheehan being dormant, the defendant obtained no title to the goods purchased by him at the sheriff's sale. (*Peek* v. *Tiffany*, 2 Coms. R. p. 451; *Herkimer County Bank* v. *Brown*, 6 Hill, 232; *Barr* v. *Barber*, 3 Cow. 272; *Stone* v. *Waddel*, 2 Sand. Ch. R. 494; *Krempland* v. *Macauley*, 4 T. R. 436.)

II. The referee erred in rejecting the testimony of Sheehan, the object of which was to show that the county judge, in making the order of assignment, had not jurisdiction, as that was an issue by the pleadings. (*Starbuck* v. *Murray*, 5 Wend. 148; *Barbour* v. *Winslow*, 12 id. 102; *Smith* v. *Fink*, id. 9–11; *Denning* v. *Cowens*, 11 id. 647; Phillip on Evidence, Cowen and Hill's notes, part ii. note 511, pp. 800, 801, and the cases there cited.)

III. The plaintiff is estopped from denying the defendant's title to the goods, inasmuch as the sale was made under the execution of the plaintiff, in whose favor the supplementary proceedings were taken, and upon which the appointment of a receiver was allowed. (*Otis* v. *Fill*, 8 Barb. Rep. 102; *Martin* v. *Hugell*, 7 id. 407; *Chautauque County Bank* v. *White*, 6 id. 589; *Welland Canal Company* v. *Hathaway*, 8 Wend. 480; *Degell* v. *Odell*, 3 Hill, 215.)

IV. A receiver can only be appointed upon notice to the judgment creditor. (*Dorr* v. *Noxen*, 5 How. Pr. R. 29.) Nothing is to be presumed in favor of jurisdiction of inferior officers and tribunals. (*The People ex rel.* v. *Hurlburt*, 5 How. Pr. R. 446.)

V. There is no validity in the order for the appointment of the receiver, which was founded on the consent of Headley. Attorneys are not permitted to act as attorneys in these supplemental proceedings. Their acts are only advisory to the defendant upon his examination.

VI. The report is against all the evidence in the case. There is no conflicting evidence.

*C. Bainbridge Smith*, for the plaintiff, made and argued the following points :

I. The defendant sets up title to the property in question by purchase at a sheriff's sale, under two executions issued upon two judgments of his against said William B. Sheehan, and he alleges in his answer, that he " became possessed of the said goods described in the said complaint in no other way or manner." The judgments of the defendant, under which the sale was made, were fraudulent and void. 1. They were originally obtained as collateral security to secure certain notes mentioned in them. The notes set forth in the Ludlum judgment had been long cancelled before it was assigned to the defendant, and long before the sale took place. 2. A judgment confessed as security for one indebtedness cannot be made to cover any other than that specified in the statement. (*Bergen* v. *Boerum*, 2 Caines' R. 256; *Troup* v. *Wood*, 4 J. C. R. 247 ; *James* v. *Johnson*, 6 id. 433.) 3. If a judgment be satisfied, the power to sell under it ceases, and *semble*, should a sale take place, even a *bonâ fide* purchaser, without notice, will acquire no title. (*Wood* v. *Colvin*, 2 Hill, R. 566 ; *Dater* v. *Troy Turnpike Co.* id. 630 ; *Jackson* v. *Cadwell*, 1 Cow. R. 622.) First. In cases where the judgment has been reversed, a *bonâ fide* purchaser, in some cases, will be protected, but a party to the executions is not considered such. (Id.) Second. So where part of the judgment has been paid, the sale would be wrongful beyond the sum actually due. (*Peck* v. *Tiffany*, 4 Coms. R. 451.)

II. It was incumbent on the defendant, in proving his title to the property purchased by him, to show a valid judgment and execution. (*Yates* v. *St. John*, 12 Wend. R. 74; *Earl* v. *Camp*, 16 id. 562.) 1. The defendant's judgments, under which he alleges " he became possessed of the property, and in no other way or manner," are void, and no property could pass at a sheriff's sale under the executions issued upon them. First. The " statement " is not properly verified. There is annexed the usual verification to a complaint. If the statement was false, Sheehan could not be indicted, for it is not a com-

plaint. Second. No judgment was ever endorsed by the clerk on the statement. The statement and affidavit become the judgment roll. Third. An authority to confess judgment without process must be clear and explicit, and must be strictly pursued, otherwise the court has no jurisdiction. (*The Manf. and Merch. Bank* v. *St. John*, 5 Hill, 497; Code of Procedure, § 384.) Fourth. The plaintiff can take advantage of it in this action. (*Lawless* v. *Hackett*, 16 J. R. 149 ; *Latham* v. *Edgerton*, 9 Cow. R. 227 ; *Borden* v. *Fitch*, 15 J. R. 141 ; *Denning* v. *Corbin*, 6 J. R. 433 ; *Mitchell* v. *Williams*, 4 Hill, 13.)

III. The executions upon these judgments were issued on the 17th May, 1849, with instructions on the part of the plaintiff to the sheriff, not to sell, and from that time until February, 1850, no action was taken upon them. 1. The judgments were never intended to be enforced. 2. The executions were not issued to be executed. (2 R. S. 3d ed. 463, § 14.) 3. They became dormant, and no title to the goods passed to the defendant. (*Imray* v. *Magnay*, 11 Mee. and W. 267 ; *Hunt* v. *Hooper*, 12 id. 664 ; *Lovick* v. *Crowder*, 8 B. and C. 133 ; *Bradley* v. *Windham*, 1 Wils. 44 ; *Kellogg* v. *Griffin*, 17 J. R. 274 ; *Knower* v. *Barnard*, 5 Hill, 377 ; *Benjamin* v. *Smith*, 12 Wend. 405 ; *Crary* v. *Sprague*, id. 41 ; *Farrington* v. *Sinclair*, 15 J. R. 428, 430 ; *Wilder* v. *Fonday*, 4 Wend. 100 ; *Rew* v. *Barker*, 3 Cow. 272.)

IV. The statute of frauds reaches fraudulent executions as well as fraudulent judgments. An execution for the full amount of a *bonâ fide* judgment, where the whole or a part of the judgment is satisfied, is within the operation of the statute. (*Wilder* v. *Fonday*, 4 Wend R. 101 ; *Crary* v. *Sprague*, 12 id. 41 ; *Twyne's Case*, 1 Stark. C. L. Am. Notes, 1.) There was no levy made under the executions until some nine months after the sheriff had received them. The "levy" testified to by Carlin, the deputy, consisted of his sending one of his keepers where the property was, and making a memorandum in these words, "levied, May 18, 1849, fancy brushes and stock," etc., and calling there a half dozen times within two weeks, when he was told by the deputy not to go there any longer. From

that time until within a few days of the sale, February 5, 1850, the defendant in the execution was in charge of the property in question. Carlin, the deputy sheriff, testifies that he did not make an inventory until "three or four days before the sale, and that was the only inventory made." (*Beekman* v. *Lansing*, 3 Wend. R. 446; *Haggerty* v. *Wilbur*, 16 J. R. 448; *Wester-velt* v. *Pinckney*, 14 Wend. 123.) 1. The executions were spent. 2. The sheriff's term of office, as well as that of his deputy, expired on the 1st January, 1850, and the inventory made and sale took place in February following. (*Lovick* v. *Crowden*, 8 B. and C. 132.)

V. The "proceedings supplementary" were instituted against the defendant on the 3d January, 1850, a month and more previous to the sale, and of which and the injunction therein, the defendant at the time had notice. (*De Kay* v. *Merrihew*, 3 Leg. Ob. 367, 374; *Porter* v. *Williams*, 1 C. R. N. S. 144.)

By the Court. Ingraham, First J.—There was no error in excluding the evidence to show want of jurisdiction in the county judge. The jurisdiction had been assented to by Sheehan, and by the execution of the assignment he vested in the receiver the assigned property. A stranger cannot deny the title of the assignee for any irregularity occurring in the proceedings prior to the assignment.

The executions issued in favor of Allen and Ludlum were found to be dormant by the referree. The evidence was sufficient to warrant such a conclusion. The judgments appear to have been taken as collateral security, and although executions were issued and levies made under them, yet directions were given that they should be delayed, and the sheriff was told that the plaintiff did not want to break up Sheehan in his business. As against other judgment creditors, such executions were dormant and a more vigilant creditor obtains priority.

If the evidence rested here the plaintiff would be entitled to recover, but it appears in the case that the sale was actually made under Houghton's execution as well as the others. In

fact, if the sale had not been insisted upon by the attorney for Houghton, it would not at that time have taken place.

Although the executions of Allen and Ludlum were dormant as to other creditors, they were not so as to the judgment debtor.

When Houghton's attorney directed the sheriff to proceed and sell on his execution, and the sale was made under the three executions, there can be no doubt that the title of Sheehan to the property was ended, and that the sale to Allen was a valid one.

I am also inclined to the opinion that a sale even under a dormant execution, may be a valid one, and where the execution of the subsequent creditor is at the time in the hands of the sheriff, he cannot deny the validity of the sale, but must resort to a motion to obtain the proceeds from the sheriff.

In *Peck* v. *Tiffany*, 2 Coms. 456, it is said, " If the sheriff sold under an execution after it became dormant as against creditors, and after the execution of another creditor came to his hands, the sale would not have been void.   " The defendant in the execution could not have taken · advantage of its being dormant.   " It would then have been a mere contest between the creditors to determine upon which of the executions the avails of the sale should be applied."

In this case the purchaser was the plaintiff in the execution, and even conceding that where the plaintiff in an execution which has become dormant, who has purchased in the property, acquires no title as against a judgment creditor (which I am not disposed to admit to its full extent), still in this case, inasmuch as the sale was made under the three executions of which the last was free from that objection, the purchaser's title was undoubtedly valid.

But it is argued that though the sale was actually made under the executions of Allen and Ludlum, which are dormant, and of Houghton which was not, still that the defendant in his answer has only claimed title under the first two executions, and cannot avail himself of the sale under the Houghton execution, because not averred in the answer.

The defendant's answer claims title to the property by virtue of a sale made by the sheriff under those executions without setting forth the judgment and execution of Houghton.

We are referred by the plaintiff's counsel to a case in 2 Seld. 179 (*Field* v. *The Mayor*, etc.) as authority for this proposition, but that case appears to have been decided upon the other point named by the judge, viz. that the notice to the comptroller was sufficient. Besides, if it were otherwise, the defence in that case, which was not set up in the answer, was payment, of which the plaintiff could have no notice unless it was pleaded, and which, under all the rules of pleading, it was necessary should be distinctly set out.

The rule, however, is more fully stated by Chief Justice Jewett in the Court of Appeals in *Kelley* v. *Western*, 2 Coms. p. 500, where he says, "The defendant is required, besides answering the plaintiff's case, to state to the court in his answer all the circumstances of which he intends to avail himself by way of defence; and he cannot avail himself of any matter in defence, which is not stated in his answer, even though it should appear in evidence. It appears to me, however, that there are two reasons why this rule should not apply to the present defence.

The plaintiff in whose behalf the supplementary proceedings were taken, directed this sale to be made, it was made under his execution as well as the others, and this fact is proven by the plaintiff on the cross examination of the deputy sheriff by his counsel. After the plaintiff has proven the defendant's title to be good, and of course that the plaintiff has no title, it would be a mockery of justice to hold that the plaintiff had a right to recover, because the defendant had not sufficiently set out the defence in the answer. And the more so when the object of this action is to recover the property for the benefit of the plaintiff in the third execution under which such sale took place.

We may also consider this as coming within the provisions of the Code, §§ 170, 471. The defence is set up in the answer, but defectively. The sale by the sheriff is averred.

Richards *v.* Allen.

The parties do not come to trial without knowledge on the part of the plaintiff that the sale by the sheriff was the foundation of the defendant's title. Such title was defectively set out, and the rule as stated by Chief Justice Jewett in the last cited case may with propriety be applied here. " When the pleading sets up a particular matter as the ground of defence and fails to present it as proved in some particular, so that there is a variance between the pleading and proof, the sections of the Code referred to apply. But when there is a total want of any allegation in the pleading of the subject matter as a ground of defence, the want of such allegation is not cured by the Code."

The plaintiff is bound to show a title to the property he seeks to recover before he is entitled to a verdict, and if we conceded that the defendant could not by way of defence give this matter in evidence, still if the plaintiff shows affirmatively that he has no title, there is no ground upon which he can recover.

We are of opinion that there was error on the part of the referee, and that the report must be set aside, costs to abide the event.

As the case has been fully placed before the referee, it would expedite the final decision of this case, if the plaintiff should appeal, to have the judgment entered by the court for the defendant, and if the parties so agree, the form can be settled by one of the judges with proper exceptions to the ruling. If not, the report is opened and referred back, either party to be at liberty to produce further testimony.

Judgment set aside ; report referred back to the referees, with leave to either party to produce further testimony. Costs to abide the event.